**In re ROBERT E. DERECKTOR OF RHODE ISLAND, INC. d/b/a Derecktor Shipyard, Debtor.**

**Bankruptcy No. 92–10015.**

United States Bankruptcy Court,
D. Rhode Island.

Feb. 11, 1992.

Allan M. Shine, Winograd, Shine & Zacks, P.C., Providence, R.I., for debtor.

Charles L. Glerum, Choate, Hall & Stewart, Boston, Mass., for Federal Deposit Ins. Corp.

John Allen, Hinckley, Allen, Snyder & Comen, Providence, R.I., for R.I. Port Authority.

Richard M. Peirce, Roberts, Carroll, Feldstein & Peirce, Providence, R.I., for United Steel Workers.

Patricia Zesk, Edwards & Angell, Providence, R.I., for Ins. Co. of North America.

Stephanie Browne, Asst. U.S. Atty., Office of U.S. Atty., Providence, R.I., for U.S.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on February 10, 1992, on the final hearing on the Debtor's Motion for Authority to Use Cash Collateral. The Federal Deposit Insurance Company (FDIC) which has a security interest in the cash proposed to be used, objects, on the ground that its claim is not adequately secured.

## FACTS

By stipulation of the parties, the following facts are established for purposes of this proceeding.

1. FDIC holds a valid, enforceable and duly perfected first preferred ship's mortgage on the Debtor's Dry Dock III.

2. The amount owed to FDIC by Debtor pursuant to the mortgage is $5,852,447.04, excluding costs of collection and attorneys' fees.

3. Debtor owes an additional $1,143,000 to the FDIC, excluding costs of collection and attorneys' fees, on a revolving line of credit.

4. The line of credit debt and the Dry Dock III mortgage debt are secured by a valid, enforceable and duly perfected security interest in all Debtor's assets.

5. The Rhode Island Port Authority (RIPA) is owed approximately $5,000,000, plus an undetermined amount for rent. This obligation is properly secured by a security interest in all of Debtor's tangible assets and a secured mortgage on Dry Dock III.

6. Pursuant to a Lender Agreement dated October 27, 1987 between FDIC's predecessor in interest, Bank of New England–Old Colony, and RIPA, those parties agreed to share RIPA's first lien on Debtor's tangible assets, excluding Dry Dock III, on a *pari passu* basis in accordance with the amount of Derecktor's secured debt to Bank of New England–Old Colony and to RIPA, respectively, at any given time. FDIC has succeeded to Bank of New England–Old Colony's rights under the Lender Agreement.

7. Dry Dock III has an appraised fair market value of $7,400,000.

8. Debtor's machinery and equipment have an appraised liquidation value of $1,800,000. This appraisal does not include Dry Docks I and II, or the Debtor's inventory.

9. Dry Docks I and II have a combined maximum value of $1,000,000.

10. FDIC is entitled to recover its costs of collection, including reasonable attorneys' fees and expenses.

## DISCUSSION

■ The Debtor argues that it should be authorized to use FDIC's cash collateral on an open-ended basis, "until further order of the Court." In support of this request the Debtor warns that a time-restricted use of cash collateral would impair its ability to secure contracts going forward, thereby displacing employees and jeopardizing the Chapter 11 case. The Debtor also argues that possible (negative) media reports would add to the Debtor's problems. While both of the above arguments represent some of the practical hurdles facing this reorganization Debtor, neither one, based on need alone, may be the reason for this Court to grant the relief requested. Were we to succumb to any such temptation, it would clearly be reversible error. We hold, instead, that the Debtor is entitled to the relief granted below, based upon the merits of its argument, when viewed in the totality of the circumstances as we see them.

The evidence indicates, and we conclude therefrom, that sufficient adequate protection exists for secured creditors if, and only if the proposed assignment of the Debtor's "Tugboat Contract" (awarded through the U.S. Navy) to a Louisiana shipyard is finalized. Without that assignment, and the attendant settlement of a claim against Insurance Company of North America (valued at approximately $2,500,000), FDIC is not adequately secured, nor is there much hope for a significant distribution to the other secured creditors.

Also, without the assignment the cash flow projections prepared by the Debtor's comptroller, Sheldon Charmatz, demonstrate break-even to negative numbers through May, 1992. The risk of failure on any job between now and May, 1992 would fall completely upon the secured creditors, and therefore the Debtor's proposed business schedule is not authorized at this time.

On the other hand, the testimony of Thomas Derecktor, the Debtor's president, is that the assignment negotiations have progressed to the point where a draft agreement has been prepared by the proposed assignee, Trinity Marine Group of Louisiana. In addition, the Navy has apparently agreed to a modification of the existing Tugboat Contract, which modification would advance $330,000 to the two shipyards to fund an inventory of the work in progress and material associated with the Contract. Of those funds, approximately $202,000 is slated for the Debtor. The award of said funds to the Debtor under the modification is expected imminently.[1]

We reject FDIC's contention that the assignment has no value whatsoever, and are of the opinion, based upon the record to date, that the potential and very substantial value of this asset is probably the key to the future of the Debtor, and the viability of the claims of its unsecured creditors. We also rule that there is no prejudice to FDIC to authorize the Debtor's use of the cash collateral necessary to achieve the assignment, because the time and money expended for an inventory and continued negotiations represent the same expenditures which FDIC would make, were it to realize upon that "asset," on its own, in liquidation. On the other hand, the Debtor's request that it be authorized, on an open-ended basis, to use cash collateral in the ordinary course of business, and to bid, obtain contracts, and fund new work, would probably continue to erode FDIC's secured position, and that request is DENIED, without prejudice.

Accordingly, the Debtor is authorized to use cash collateral as follows:

1. For a period not to exceed 60 days, and in an amount not to exceed $250,000 for the limited purposes discussed above (it is contemplated herein that $202,000 will be available upon the finalization of the tugboat contract modification);

2. On March 30, 1992, at 10:00 a.m., a status conference will be held to evaluate the progress to date on the assignment. The Court will expect input and/or testimony from both Trinity and Navy personnel who are knowledgeable *and* authorized to impart meaningful information, to assist the Court in determining the true status of the negotiations;

3. At that time, the Debtor's general use of cash collateral will be reconsidered;

4. Until further order, however, the Debtor is not authorized to enter into new contracts in the ordinary course of business, but may seek authorization to take on new business, on a contract by contract basis, after notice and opportunity for hearing.

---

1. The reasonableness of Derecktor's expectation in this regard is bolstered by the physical presence of Trinity personnel in Middletown, "as we speak."